## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 06-146**

**EDDIE A. HARRISON, III**                                    **SECTION: "K"(1)**


## ORDER AND REASONS


Before the Court is Defendant's Motion for Change of Venue (Rec. Doc. 47) ("Mot."). Defendant, Eddie Allen Harrison, III ("Defendant" or "Harrison") asserts that he cannot obtain a fair and impartial trial in this district because of the adverse media coverage stemming from a prior state court matter, which has allegedly created widespread and irreparable prejudice against him. The United States opposes, claiming that Defendant's motion is premature prior to voir dire proceedings and should be denied (Rec. Doc. 49) ("Opp."). For the reasons stated below, Defendant's motion to change venue is denied.


## I. BACKGROUND

Defendant was charged by the State of Louisiana for the attempted murder of New Orleans Police Officer Andres Gonzalez. Opp. at 1. On March 13, 2008, he was convicted of attempted murder in the Criminal District Court for the Parish of Orleans. Mot. at 2. On March 19, 2008, the state court found Harrison to be a multiple offender and sentenced him to 100 years at hard labor. Mot. at 2.

On May 26, 2006, Defendant was charged in the Eastern District of Louisiana for

possessing ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1).  Second Superseding

Indictment at 1 ("Indictment").  Specifically, he was charged with possessing four Speer .40

caliber cartridge cases on May 22, 2006.  Indictment at 1.  It is alleged that this ammunition was

used by the Defendant to shoot New Orleans Police Officer Andres Gonzalez.  Mot. at 1.  His

prior felony conviction was on May 10, 1999, in the District Court for the Parish of Jefferson, for

armed robbery in violation of La. R.S. 14:64.  Indictment at 1.  A second federal superseding

indictment was filed on May 11, 2007.  It contained an additional charge, also under 18 U.S.C. §

922(g)(1), for possession of a .45 caliber Gabilondoy Model Max-I handgun on or about

November 18, 2003.  Indictment at 2.

Defendant in the present motion seeks a change of venue from the Eastern District of

Louisiana.  Defendant alleges that he will be unable to receive a fair and impartial trial in the

Eastern District of Louisiana.  Mot. at 4.  He asserts that the public in the Eastern District of

Louisiana has been prejudiced by repeated public announcements that he was found guilty of

shooting a police officer and was sentenced to 100 years at hard labor.  Mot. at 4.  Defendant

points out that there "were numerous reports in local newspapers and reports of the verdict and

sentence with accompanying interviews of police officials and victims as well as the prosecutors

were featured prominently on local television stations."  Mot. at 3.  Since Defendant is charged

in this Court with possession of the ammunition used to shoot Officer Gonzalez, Defendant

contends "[t]here is no conceivable prophylaxis that could root out the resulting prejudice."  Mot

at 4.  Defendant offers no evidence that the public has in fact been prejudiced by the alleged

barrage of media reports.  Rather, Defendant presumes that the media reports have created such

widespread prejudice in this district such that Defendant cannot receive a fair and impartial trial

in this Court.  Mot. at 4.

The Government counters that change of venue is premature because "there has been no showing that prospective jurors have been affected by the pretrial publicity or that the pretrial publicity is so pervasive that a fair trial cannot be had."  Opp. at 5.  Moreover, the Government asserts that "[t]here is no reason to believe that probing voir dire in this case regarding pretrial publicity cannot . . . effectively protect the right of the defendant to a fair and impartial jury."  Opp. at 5.  Thus, the Government requests that the Motion be denied without prejudice pending voir dire proceedings at trial.  Opp. at 6.

## II.  DISCUSSION

The Sixth Amendment of the U.S. Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." US Const. amend. VI.  Rule 21(a) of the Federal Rules of Criminal Procedure states:

> Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Fed R. Crim. P. 21(a).  "The well established rule vests substantial discretion in the district court as to the granting or denying of a motion for transfer."  *United States v. Williams*, 523 F.2d 1203, 1208 (5th Cir. 1975); *see also United States v. Parker*, 877 F.2d 327, 330 (5th Cir. 1989).

When a defendant asserts that a fair trial is impossible due to adverse pretrial publicity, "it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'"  *Murphy v. Florida,* 421 U.S. 794, 800 (1975) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)); *see also Chavez v. Cockrell*, 310

F.3d. 805, 811 (5th Cir. 2002) (citing *Murphy*).  This is usually accomplished from voir dire examination of the jury pool where "[a]ctual bias can come to light."  *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976); *see also Mayola v. Alabama*, 623 F.2d 992, 996 (5th Cir. 1980) ("Barring the introduction of affidavits or testimony of jurors admitting bias, proof of such prejudice without recourse to a transcript or other detailed account of the voir dire of the jury venire would be virtually impossible.").  Alternatively, the defendant "can demonstrate that prejudicial, inflammatory publicity about his case so saturated the community from which his jury was drawn as to render it virtually impossible to obtain an impartial jury."  *United States v. Chagra*, 669 F.2d 241, 250 (5th Cir. 1982) (overruled on other grounds by *Garrett v. United States*, 471 U.S. 773 (1985)); *see also United States v. Campa*, 459 F.3d 1121, 1143 (11th Cir. 2006) (defendant "can show that juror prejudice should have been presumed from prejudice in the community and pretrial publicity.").  "A district court must presume that so great a prejudice exists against the defendant as to require a change of venue under Rule 21 if the defendant shows: (1) that widespread, pervasive prejudice against him and prejudicial pretrial publicity saturates the community where he is to be tried and (2) that there is a reasonable certainty that such prejudice will prevent him from obtaining a fair trial by an impartial jury."  *Campa*, 459 F.3d at 1143.  Such a showing raises the presumption that the defendant's jury will be prejudiced, "relieving him of the obligation to establish actual prejudice by a juror in his case."  *Chagra,* 669 F.2d at 250.

The standard for establishing presumed prejudice is demanding.  "Given that virtually every case of any consequence will be the subject of some press attention, however, the . . . principle of presumptive prejudice is only 'rarely' applicable, and is confined to those instances

where the petitioner can demonstrate an 'extreme situation' of inflammatory pretrial publicity."
*Mayola*, 623 F.2d at 997 (internal citations omitted).  Because this case is still in the pretrial
stage and the court has not impaneled a jury, the defendant cannot demonstrate actual prejudice
until voir dire examination occurs.  Accordingly, Defendant makes the more difficult and
attenuated argument that the entire venire has been so prejudiced by the media's coverage of
Defendant's state trial that such jury prejudice can be presumed.

In *Irvin v. Dowd*, 366 U.S. 717, 722-723 (1961), the Supreme Court established that
potential jurors need not be totally ignorant of the facts of a case in order to serve on juries,
especially in criminal cases that would be expected to arouse significant public interest.  The
Court pointed out that, "[t]o hold that mere existence of any preconceived notion as to the guilt
or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective
juror's impartiality would be to establish an impossible standard." *Id.* at 723.  Rather, the Court
stated, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict
based on the evidence presented in court." *Irvin*, 366 U.S. at 723; *see also Goss v. Nelson*, 439
F.3d 621, 627 (10th Cir. 2006) (quoting *Irvin*).  While adverse pretrial publicity does have the
potential to taint the entire venire, "a change of venue should not be granted on the mere
showing of widespread publicity."  *United States v. Parker*, 877 F.2d 327, 330 (5th Cir. 1989).
Rather, the defendant must demonstrate "that this publicity was in excess of the sensationalism
inherent in the crime or that pervasive community prejudice resulted from this publicity."  *Id.* at
331.

In support of the contention that this Court should presume such widespread prejudice in
the community, Defendant relies exclusively on *Rideau v. Louisiana*, 373 U.S. 723 (1963).  In

that case, the defendant's twenty-minute taped interview by a sheriff, in which he confessed in

detail to bank robbery, kidnapping, and murder, was repeatedly broadcast to a community of

150,000 people.  *Rideau*, 373 U.S. at 723-724.  The broadcasts were televised for three

consecutive days and were seen by tens of thousands of the residents in the parish.  *Id.* at 724.

At trial, two jurors who admitted to seeing the broadcasts were allowed to serve and the

defendant was convicted.  In reviewing the conviction, the Supreme Court stated that, "[f]or

anyone who has ever watched television the conclusion cannot be avoided that this spectacle, to

the tens of thousands of people who saw and heard it, in a very real sense was Rideau's trial – at

which he pleaded guilty to murder."  *Id.* at 726.  Accordingly, the Court found that the

community exposure to the defendant and the circumstances surrounding the crime was so

widespread that "[a]ny subsequent court proceedings in a community so pervasively exposed to

such a spectacle could be but a hollow formality." *Id.*

      In a line of cases that argue for the *Rideau* presumption, the Fifth Circuit has taken the

opportunity to more clearly explain when the high standard is met.  In *United States v. Nix*, 465

F.2d 90, 94 (5th Cir. 1972), the defendant submitted newspaper clippings and other evidence of

radio and televised publicity that stated that he was being tried for the third time in the same city

within the span of five weeks, and which showed that he was the focus of public attention in the

New Orleans area.  Nevertheless, the Fifth Circuit upheld the district court's denial of the

defendant's Rule 21 motion based on alleged presumed prejudice in the community because "the

jurors came from all over the district, many from rural areas and many from local areas, who

experience had shown, did not read the newspapers or hear television." *Id.* at 94-95.

      In *Mayola v. Alabama*, 623 F.2d 992, 998 (5th Cir. 1980), the defendant was able to

6

prove that the publicity promulgated throughout the community was prejudicial, and the Fifth

Circuit found that it may have been sufficient to satisfy the *Rideau* standard on that point.

However, the court maintained that, unlike the petitioner in *Rideau*, who was able to prove that

his televised confession had been seen by tens of thousands of citizens in a particular Louisiana

parish of 150,000 from which the jury was drawn, the defendant in *Mayola* "produced no . . .

newspaper circulation figures or any other evidence of the scope of that county's exposure to the

offensive News and Post-Herald articles."  *Id.*  The court held that, "[i]n the absence of such

proof, petitioner could hardly have demonstrated the pervasiveness or saturation level of

prejudicial publicity necessary to invoke the *Rideau* presumption."  *Id.*; *see also Latham v.

Crouse*, 330 F.2d 865, 867-868 (10th Cir. 1964) (finding insufficient defendant's arguments that

a televised interview created such community prejudice that impaneling an impartial jury would

be impossible, but which was unsupported by any other evidence of bias in the community).

Finally, in *United States v. Parker*, 877 F.2d 327, 331 (5th Cir. 1989), the Fifth Circuit held that

although the defendant had documented that his case had in fact received widespread pretrial

publicity, he did not meet the *Rideau* standard because the publicity was not inflammatory, the

defendant did not confess, it included no incriminating information, and he had no prior criminal

record.  *Id.*; *see also Flamer v. Delaware,* 68 F.3d 736, 754 (3d Cir. 1995) (finding no severe and

pervasive prejudice based on a series of local newspaper articles reporting on the alleged murder

which were "indisputably factual in nature, but prejudicial and inflammatory only to the extent

arising from the normal and natural reaction to any purely factual news item about a very serious

crime.").

       In light of these cases, Defendant has not satisfied the *Rideau* presumption.  Similar to

the holding in *Nix*, where the Fifth Circuit stated that an impartial jury could still be impaneled in the wake of adverse publicity because jurors were drawn from the entire Eastern District of Louisiana, Defendant has presented no evidence to show that it would be impossible to impanel an unbiased jury from the same judicial district. Harrison attempts to equate the repeated televised public confession in *Rideau* with general media coverage of his own sentencing. Unlike *Parker*, the publicity here appears to have been incriminating, but the Supreme Court has established that, "[j]uror exposure to information about a state defendant's prior convictions or to news accounts of a crime with which he is charged do not alone presumptively deprive the defendant of due process." *Murphy v. Florida*, 421 U.S. 794, 799 (1975).

Most importantly, Defendant does not provide any evidence that quantifies the extent of the media's publicity. Harrison contends that "[t]he news coverage of the state court matter was extensive," and that it was reported in local newspapers and accompanied by interviews on local television stations. Mot. at 3. However, like the defendant in *Mayola*, who did not provide any proof to substantiate his claim of presumed prejudice in the community sufficient to invoke the *Rideau* presumption, Harrison does not provide any empirical data sufficient to meet the inflammatory level required by *Rideau*. Moreover, even if the defendant can demonstrate that "the community was saturated with inflammatory pretrial publicity sufficient to raise a presumption of prejudice, that presumption may be rebutted." *Parker*, 877 F.2d at 331; *see also United States v. Harrelson,* 754 F.2d 1153, 1159 (5th Cir. 1985) (the government may rebut a presumption of prejudice and demonstrate from the voir dire that an impartial jury was actually impaneled).

If any prejudice actually exists, it will be revealed at voir dire. When courts go forward

8

with voir dire proceedings, members of the venire often reveal "that they were either entirely unaware of the case, or had only a vague recollection of it."  *Campa*, 549 F.3d at 1145.  One court responded to a Rule 21 motion when the volume of pretrial publicity had been shown to be "both extensive and intensive" by stating that "to presume, in advance of the voir dire examination of the prospective trial jurors, that the extent of the pre-trial publicity in this case negates the selection of a fair and impartial jury represents a premature and unwarranted supposition." *United States v. Addonizio*, 451 F.2d 49, 61 (3d Cir. 1971); *see also Williams*, 523 F.2d at 1209 n.10 ("Holding a final decision on the motion [to change venue] in abeyance pending the conclusion of voir dire is clearly the preferable procedure.").

## III.  CONCLUSION

For the abovementioned reasons, it is premature to grant Defendant's motion.  Of course, if the voir dire process reveals actual prejudice that would deny Defendant a fair and impartial jury, Defendant may renew his motion at that time.  Accordingly,

**IT IS ORDERED** that Defendant's Motion for Change of Venue (Rec. Doc. 47) is **DENIED WITHOUT PREJUDICE.**

New Orleans, Louisiana this _____4th____ day of June, 2008.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**